## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

SEAN P. REILLY,

      Petitioner,

v.                                  Case No. 4:21-cv-118-MW-MJF

RICKY DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Sean P. Reilly, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 49. Reilly replied. Doc. 58. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Reilly is not entitled to habeas relief.

### I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Reilly's habeas petition challenges his September 22, 2009 conviction for two counts of Criminal Use of Personal Identification

Information in Leon County Circuit Court Case No. 2008-CF-4221, and

the subsequent revocation of his probation on June 18, 2015. Doc. 1 at 1.

## A.    __The 2009 Judgment__

In 2007, Reilly was charged in the County Court for Leon County,

Florida, Case No. 2007-MM-1661, with two misdemeanors: Stalking, and

Harassing Communication by Causing a Phone to Ring Repeatedly. *See*

Doc. 49-1. On December 5, 2008, Reilly was charged in the Circuit Court

for Leon County, Florida, Case No. 2008-CF-4221, with two felonies: two

counts of Criminal Use of Personal Identification Information. Doc. 49-1.

Reilly's misdemeanor case was consolidated into his felony case. *Id*.

On May 8, 2009, an amended information was filed in Case No.

2008-CF-4221, charging Reilly with an additional (third) count of

Criminal Use of Personal Identification Information. Doc. 49-1 at 2. The

felony charges involved three victims—all students at Florida State

University. Reilly worked in the admissions office at FSU. Reilly was

alleged to have used his position in the admissions office to access the

victims' personal identification information and drop their classes

without their knowledge or consent. *See Reilly v. State*, No. 4:18-cv-225-

MW-CAS, Doc. 26-15 – Doc. 26-16, Exs. H6 – H8 (Trial Tr. in Case No. 2008-CF-4221).

Reilly proceeded to a jury trial on the three counts of Criminal Use of Personal Identification Information (Counts 1, 2, and 5). The jury found him guilty as charged on Counts 1 and 5, and not guilty on Count 2. Doc. 49-2. On September 22, 2009, the trial court withheld adjudication of guilt and sentenced Reilly on Count 1 to a "split" sentence of 11 months and 29 days of imprisonment in jail followed by 2 years on community control followed by 2 more years on probation. Doc. 49-2. As to Count 5, the court sentenced Reilly to a "split" sentence of 2 years on community control followed by 2 years on probation, to run consecutive to the incarceration-portion of the sentence on Count 1 but concurrent with the supervision-portions of the sentence on Count 1 (the community control and probation). *Id.*

**B.    The 2010 Probation Revocation**

On December 6, 2010, the state court found Reilly guilty of violating the conditions of his probation and revoked his probation. Doc. 49-3. The state court sentenced Reilly on Count 1 to 60 months of imprisonment. On Count 5, the court sentenced Reilly to a "split" sentence of 2 years on

community control followed by 2 years on probation, to run consecutive to the prison sentence on Count 1. Doc. 49-3.

## C.   **The 2015 Probation Revocation**

On December 6, 2013, while Reilly was serving the supervision-portion of his sentence on the 2010 VOP Judgment, the State filed an "Emergency Motion to Revoke Probation and Order Defendant's Arrest and Hold Without Bond." Doc. 49-15. Reilly was charged with violating three conditions of his probation on Count 5 in Case No. 2008-CF-4221 by: having contact with one of the victims, committing a new law violation of Aggravated Stalking, and failing to comply with the court's instructions not to have contact with the victims. Doc. 49-15 (Mot. to Revoke Probation); Doc. 49-16 (VOP Report). Reilly also was charged with a new law violation of Aggravated Stalking in Leon County Circuit Court Case No. 2014-CF-17. *See* Doc. 49-15.

On April 6, 2015, the state court held a combined VOP hearing in Case No. 2008-CF-4221 and a nonjury trial on the new charge in Case No. 2014-CF-17. Doc. 49-17 (Trial & VOP Hr'g Tr.); Doc. 49-18 (State's Exs.). The state court found Reilly guilty of violating his probation/community control on Count 5 in Case No. 2008-CF-4221

(imposed by the 2010 VOP Judgment), and also found Reilly guilty of Aggravated Stalking in Case No. 2014-CF-17. Doc. 49-19 (Order After Nonjury Trial and VOP Hr'g); Doc. 49-20 (J. & Sentence, Case No. 2008-CF-4221). On June 18, 2015, the court revoked Reilly's probation in Case No. 2008-CF-4221, and sentenced him to 5 years of imprisonment to run consecutive to the sentence imposed in Case No. 2014-CF-17. Doc. 49-20.

The Florida First District Court of Appeal ("First DCA") affirmed the judgment on January 9, 2017, without opinion. *Reilly v. State*, No. 1D15-3302, 222 So. 3d 1211 (Fla. 1st DCA 2017) (Table) (per curiam) (copy at Doc. 49-21). The Supreme Court of the United States denied Reilly's petition for writ of certiorari on October 2, 2017. Doc. 49-21.

After unsuccessfully seeking postconviction relief, Reilly filed his federal habeas petition on February 25, 2021. Doc. 1 at 1. Reilly's petition raises two claims of ineffective assistance of counsel.

## II.  RELEVANT LEGAL PRINCIPLES

### A.  <u>Section 2254 Standard of Review</u>

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court."

28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the

framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[1]

Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13 (O'Connor, J., concurring). In applying the

"unreasonable application" clause, the federal court defers to the state

court's reasoning unless the state court's application of the governing

legal principle was "objectively unreasonable" in light of the record before

---

[1] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court warned that, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause of § 2254(d)(1), the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a

substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, however, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## B. <u>Federal Law Governing Claims of Ineffective Assistance of Counsel</u>

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Page 10 of 30

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter* at 105 (citations omitted).

## III.   DISCUSSION

**Ground One**      **"Trial Counsel Was Ineffective, in Violation of the Sixth and Fourteenth Amendments to the United States Constitution, For Failing to Convey the State's Plea Offer of Deferred Prosecution before Petitioner Proceeded to Jury Trial." Doc. 1 at 3.**

Reilly's first claim challenges his 2009 underlying judgment in Case No. 2008-CF-4221. Reilly alleges that prior to trial, the State "extended an offer to Petitioner, through trial counsel, to defer the prosecution if, on one condition, Petitioner agreed to stay away from Jennifer Davis, Petitioner's ex-girlfriend and one of the alleged victims in this case." Doc.

1 at 3. Reilly alleges that his trial counsel Paul Villeneuve never conveyed the offer of deferred prosecution to him. *Id*. at 3. Reilly asserts that had counsel conveyed that offer, he would have accepted it and would not have felony convictions on his record or served prison time. *Id*. at 3.

The parties agree that Reilly presented this claim to the state courts in his first Rule 3.850 proceeding. Doc. 1 at 3-4; Doc. 49 at 2-8, 25. The State asserts that Reilly is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 49 at 25-27.

### A.   *The State Court's Decision*

This claim was included in Reilly's amended Rule 3.850 motion dated July 29, 2013. Doc. 49-5. The state circuit court conducted an evidentiary hearing on this claim on April 29, 2018. Doc. 49-6 (Evid. Hr'g Tr.). Reilly was assisted by counsel at the evidentiary hearing. *Id*. Four witnesses testified: (1) Reilly himself; (2) Eric Abrahamsen, the prosecutor in Reilly's underlying criminal case; (3) Mr. Villeneuve, Reilly's former trial counsel; and (4) Joseph Reilly, Petitioner Reilly's father. *Id*. Several documents were entered into evidence. Doc. 49-7 (State's Exs.); Doc. 49-8 (Def.'s Exs.); Doc. 49-9 (Ct.'s Ex.).

Mr. Abrahamsen testified that *before* the felony counts were added, he verbally communicated to Villeneuve a 12-month deferred prosecution agreement ("DPA") concerning the two misdemeanor charges in Case No. 2007-MM-1661. Doc. 49-6, Hr'g Tr. at 15-17. Under the proposed DPA, the State would dismiss the misdemeanor charges if Reilly had no contact with the victim for 12 months. *Id.* at 15-16. Abrahamsen testified that he and Villeneuve discussed the proposed agreement "on multiple occasions" and that he and Villeneuve both "were very, very hopeful" that Reilly would accept it because it was in everyone's best interest. *Id.* at 16-17.

Mr. Villeneuve testified that he was "100 percent" certain that he conveyed the DPA offer to Reilly. *Id.* at 34. Villeneuve did not recall whether he conveyed the offer over the phone or in person, but he remembered verbally conveying it to Reilly and knew that they discussed it. *Id.* at 29, 33. Villeneuve "believed it was a – a generous proposal with very little expected in return." *Id.* at 29. Villeneuve remembered Reilly's reaction—that Reilly "didn't want to do it." *Id.* at 33. Villeneuve's "most vivid memory" was his "dismay" that Reilly did not deem the offer acceptable. *Id.* at 29. Villeneuve explained:

[I]t just was confusing to me that when the only requirement was – and I would add a little bit to it. I remember there being discussions about [Reilly] moving home to Miami. I thought that testimony also – my – my memory [i]s without seeing anything, but I thought [the DPA offer] also included some minimal counseling. And even with that, I remember trying to get him to understand that if you just stop, move home, leave her alone, and go see a counselor that will say you're okay, all of this gets dropped. It goes away, completely.

And – and I was just unable to really understand how you couldn't realize that, obviously, he knew it could get worse than what it was . . . and be given the opportunity to have all of these problems solved outside of criminal court, and – and just would not entertain it.

Doc. 49-6, Hr'g Tr. at 33-34.

Reilly testified that Villeneuve did not convey the DPA offer to him. *Id.* at 40. Reilly's father testified that he was present during two telephone calls and two in-person meetings between his son Sean and Mr. Villeneuve, and that a DPA was not discussed at any of those meetings.

At the conclusion of the evidentiary hearing, the state circuit court ruled:

THE COURT:  All right. First went – went through *Alcorn* as was provided to me, and *Alcorn* kind of compartmentalizes the Strickland standard; but it's still the Strickland standard, deficient conduct and prejudice. The deficient conduct would be a plea offer having been made and not conveyed. The prejudice would be that the plea would have been accepted;

Page 14 of 30

that the court would have accepted the plea; that the result would have been less severe. So let me deal with both issues.

First, as to the deficient conduct, I find the Defense has failed to prove deficient conduct. I accept Mr. Villeneuve's testimony. I reject the Defendant's testimony and to a lesser extent the father's testimony.

I found Mr. Villeneuve to be the more credible witness. The father was really not in a position to know much about what was conveyed to his son. I think he just had a lack of information.

The main argument to the contrary in this case has been that it's just not logical that Mr. Reilly would have rejected such a magnanimous offer. However, this case is fraught with instances where Mr. Reilly has ignored good, logical advice. He's rejected logical every step of the way in this process.

I'm not surprised that he ignored logic in this particular instance. I'm confident Mr. Villeneuve essentially begged him to take a plea. I'm sure that Mr. Abrahamsen and Mr. Villeneuve both, as they stated, very much would have liked to have resolved this case.

Mr. Reilly is just – has an agenda of his own; and, therefore, he rejected logic, so I'm not swayed by the Defense argument that rejecting this was not logical, although I agree it was not. But that doesn't seem to have a place in this case.

I could just leave it alone with that first ruling, but I guess I'm going to complicate things a little bit more by going to the prejudice.

First, as to prejudice – and this would be an alternative ruling, of course, in – consistent, being consistent with my first ruling. First, I would find the Defendant did not accept a

plea, was not offered to – that the plea was offered to him and that he chose not to accept it. That's the first criteria of prejudice.

The second criteria, the court involvement is – is not implicated in the deferred prosecution agreement, so that's not applicable. Deferred prosecution is strictly between the defense and the prosecution. The Court has no involvement.

The third criteria is interesting in this case, in *Alcorn*, and I quote – I've paraphrased the beginning and the end, but this is a quote from *Alcorn*: ["]The end result, the criminal process would have been more favorable by reason of the plea.["] End result, the criminal process would have been more favorable by reason of the plea.

And this kind of gets us to, perhaps, a legal issue that I don't really need to get to based upon my prior rulings, but it is of interest to the Court, whether *Alcorn* has application in a deferred prosecution of this nature, particularly when you have a deferred prosecution – and I guess everybody understands what happens in a deferred prosecution. The Defendant has, I think it's – the testimony was [–] a year to show that he can not violate the law and not make contact with the victims in the case. And I accept Mr. Villeneuve's addition, sounds logical, and I accept his testimony.

There was a minimal counseling provision; and if that's done at the end, the State would nol pros [sic] the charges.

In this case, it's interesting, because I think it's clear and the record establishes, the Defendant would never have successfully completed a deferred prosecution agreement. And what happens in a deferred prosecution agreement is as soon as the Defendant violates the pretrial – the deferred prosecution agreement, he comes right back before the court, and it proceeds henceforth.

Page 16 of 30

It is established that Mr. Reilly would not have made it. The conduct in Case No. 2008-CF-781 would have violated his deferred prosecution agreement. That's the tampering with the witness. Same victim involved in the other case. That's why I wanted to make – have the information made part of the Court file from that case.

It's clear that would have been a violation of his deferred prosecution agreement. It's probably best set out in the State's Motion to Revoke Bond from January 13, 2009, in this case.

It kind of sets out the circumstances. It's a little confusing because the higher case number, 4221, the conduct predates the conduct in 891. 781 occurred after 4221, and I guess that was just a result of one of them being in county court and transferred into circuit court. But the conduct set out in the Motion to Revoke Bond and the affidavit attached occurred after the Defendant was released on bond in this case, what – what ended up being this case, I guess, is a better way to put it.

It also showed that he would not have finished deferred prosecution. On the VOP from August 2010 where he failed to follow instructions of the probation officer, remain confined to his residence. I think that's further indication.

Although it would have been outside the year period, we have the third case, which occurs in December 2013 where he again makes contact with the victim.

So I think it's absolutely clear in this case that even assuming for the sake of argument that the Defendant had accepted a deferred prosecution, it would not have – he would not have successfully completed that deferred prosecution. We'd have been right back here where we are.

Page 17 of 30

That's further supported – I think if you look in the sentencing file, when – when I sentenced Mr. Reilly in this case, I strongly encouraged him to – to change his ways, to leave the victim alone and to move on with his life.

Frankly, I never would have dreamed we'd end up where we are now. But Mr. Reilly is just engaged in a pattern of conduct that's self-destructive, and that's why we're where we are. So for those reasons I'm going to deny his motion.

Doc. 49-6, Hr'g Tr. at 73-78 (discussing *Alcorn v. State*, 121 So. 3d 419 (Fla. 2013), and *Strickland, supra*). The court's oral rulings were followed by a written order denying Reilly's Rule 3.850 motion. Doc. 49-10. The written order stated in relevant part:

[T]he motion is denied. Based on the reasons as announced on the record, the Court finds that defendant has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency.

Doc. 49-10. The First DCA affirmed without explanation. *Reilly v. State*, No. 1D18-1894, 277 So. 3d 1009 (Fla. 1st DCA 2019) (Table) (per curiam) (copy at Ex. 49-13).

## B.    *Reilly Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Reilly's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *Id.* at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Reilly's claim for the reasons provided by the state circuit court.

The state court's decision is not "contrary to" clearly established federal law, because the state court identified and applied the *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Reilly must show that the First DCA's

decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Reilly fails to make either showing.

"AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing 28 U.S.C. § 2254(e)). "[T]he credibility of a witness is a question of fact entitled to a presumption of correctness under AEDPA." *Ingram v. Warden, Holman Corr. Facility*, 80 F.4th 1304, 1313 (11th Cir. 2023), c*ert. denied sub nom. Ingram v. Holman CF*, No. 23-6776, 2024 WL 2116373 (U.S. May 13, 2024) (quoting *Jenkins v. Comm'r, Alabama Dep't of Corr.*, 963 F.3d 1248, 1272 (11th Cir. 2020)); *see also Whatley v. Warden, Ga. Diagnostic & Classification Ctr.*, 927 F.3d 1150, 1177 (11th Cir. 2019). "[I]n a habeas case governed by AEDPA, clear and convincing evidence consists of proof that a claim is 'highly probable.'" *Ingram*, 80 F.4th at 1313 (quoting *Fults v. GDCP Warden*, 764 F.3d 1311, 1314 (11th Cir. 2014)).

This court defers to the state postconviction court's factual findings that (1) Villeneuve's testimony was credible; (2) Petitioner Reilly's testimony was not credible; (3) Villeneuve conveyed the DPA offer to Reilly and discussed it with him; and (4) Reilly rejected the offer despite Villeneuve's advice to accept it. These factual findings are amply supported by the record that was before the state postconviction court. Reilly has not rebutted any finding with clear and convincing evidence.

Reilly argues that the fact that there is no *documentation* of Villeneuve conveying or discussing the DPA offer with him shows that Villeneuve did not convey it. Doc. 1 at 3-4; Doc. 58. The lack of documentation, however, does not show clearly and convincingly that Villeneuve's testimony lacked credibility, or that he did not convey the DPA offer. Reilly's postconviction counsel asked Villeneuve point blank: "Did you convey that offer to your client?" Doc. 49-6 at 29. Villeneuve answered unequivocally that he conveyed the DPA offer to Reilly; that he remembered discussing it with Reilly; and that he vividly recalled the feeling of dismay when Reilly rejected it. Doc. 49-6, Hr'g Tr. at 29, 33-34, 36-37. The testimony of Mr. Abrahamsen (the prosecutor who made the DPA offer) corroborated Villeneuve's testimony. *See id.* at 19-21. In

Page 21 of 30

deciding to credit Villeneuve's testimony, the state court was able to take into account the testimony and documents presented at the evidentiary hearing as well as the lack of documentation of Villeneuve conveying the DPA offer to Reilly.

Based on the state court's factual findings and the state-court record, a fairminded jurist could agree with the First DCA's decision that Reilly failed to establish deficient performance under *Strickland*. The state court's rejection of Reilly's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Reilly, therefore, is not entitled to habeas relief on Ground One.

**Ground Two**        **"Trial Counsel Was Ineffective, In Violation of the Sixth Amendment to the United States Constitution, For Advising Petitioner to Proceed to His VOP Hearing Simultaneously with His Bench Trial in Case No. 2014-CF-17." Doc. 1 at 5.**

This claim involves Reilly's 2015 VOP judgment in Case No. 2008-CF-4221. Reilly alleges that prior to the VOP hearing, trial counsel Alex Morris and Luke Lanasa advised Reilly that it was in his best interests to waive his right to a jury trial on the Aggravated Stalking charge in

Case No. 2014-CF-17, and to proceed to a bench trial simultaneously with a hearing on the VOP charge in Case No. 2008-CF-4221. Doc. 1 at 5. Reilly maintains that counsels' advice was deficient and that it prejudiced him in the VOP case. Reilly explains:

> Counsel should have advised Petitioner to proceed to a jury trial on the aggravated stalking charge in case no. 2014-CF-17 *before* his violation proceeding in this case. Had counsel done so, there is a reasonable probability Petitioner would have been acquitted of aggravated stalking in case no. 2014-Cf-17 and found not guilty of violating his probation in case no. 2008-CF-4221. The VOP was based entirely upon the alleged new law violation of aggravated stalking. Thus, the State would have been hard-pressed to prove that a violation of probation occurred once Petitioner was acquitted of aggravated stalking, as much of the evidence the State used to support the aggravated stalking charge was unsubstantiated hearsay.

Doc. 1 at 5. Reilly asserts that "[a]bsent counsel's error, there is a reasonable probability Petitioner would have been found not guilty of violating his probation in this case." *Id*. at 5.

The parties agree that Reilly presented this claim to the state courts in his Rule 3.850 proceeding that followed the 2015 VOP judgment. Doc. 1 at 6; Doc. 49 at 9-11, 27. The State asserts that Reilly is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 49 at 27-35.

## A.    *The State Court's Decision*

This claim was included in Reilly's Rule 3.850 motion dated October 25, 2018. Doc. 49-22. The state circuit court denied relief on this claim as follows:

> **Claim & Analysis:** Mr. Reilly claims his trial counsel was ineffective for advising him to proceed to his violation of probation hearing in this case at the same time as his bench trial in case no. 2014 CF 17. This claim is not legally sound because trial counsel would not have been entitled to any change in the court schedule. Also, the prejudice he alleges is entirely speculative. Even if Mr. Reilly is correct that there was a high probability of him being found innocent at one of his hearings, there is no reason to believe this would have unduly affected the result of the other. *See Bradley v. State*, 33 So. 3d 664, 672 (Fla. 2010) ("A defendant must do more than speculate that an error affected the outcome."). For these reasons the motion is denied.

Doc. 49-25. The First DCA affirmed without written opinion. *Reilly v. State*, No. 1D20-463, 305 So. 3d 512 (Fla. 1st DCA 2020) (Table) (per curiam) (copy at Doc. 49-28).

## B.    *Reilly Is Not Entitled To Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Reilly's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with

*Wilson*, this court presumes that the First DCA rejected Reilly's claim for the reasons provided by the state circuit court.

The state court's rejection of Reilly's claim is consistent with *Strickland*. Reilly's claim of deficient advice is grounded in the incorrect assumption that trial counsel controlled the court's schedule and could have assured that the trial on the Aggravated Stalking charge in Case No. 2014-CF-17 was held before the VOP hearing in 2008-CF-4221. The state court reasonably determined that counsel was not ineffective for failing to give Reilly what would have been a false assurance that the trial in Case No. 2014-CF-17 would occur before the VOP hearing in Case No. 2008-CF-4221.

The state court also reasonably applied *Strickland*'s prejudice prong to find that Reilly failed to show that counsel's advice prejudiced the outcome of his VOP hearing. *See Richter*, 562 U.S. at 112. Reilly's argument consists of speculation heaped upon speculation. Notably, this District Court previously rejected as speculative Reilly's overarching assertion that he would have been acquitted of the Aggravated Stalking charge in Case No. 2014-CF-17 if a jury, and not a judge, had heard the evidence. *See Reilly v. Dixon*, No. 4:21cv223-WS-HTC, 2023 WL 6932546,

at *5 (N.D. Fla. Sept. 21, 2023), *report and recommendation adopted*, 2023 WL 6929333 (N.D. Fla. Oct. 19, 2023).

But even if Reilly were able to show that it was reasonably probable he would have been acquitted of the Aggravated Stalking charge in Case No. 2014-CF-17, he still must show that counsel's advice prejudiced *the outcome of his VOP hearing* in Case No. 2008-CF-4221. As the state court reasonably determined, Reilly wholly failed to show that there was a reasonable probability the result of his VOP hearing would have been different.

Reilly's only argument is that "the State would have been hard-pressed to prove that a violation of probation occurred . . . as much of the evidence the State used to support the aggravated stalking charge was unsubstantiated hearsay." Doc. 1 at 5. This conclusory argument falls far short of showing a substantial likelihood of a different result. *See Strickland*, 466 U.S. at 694; *Richter*, 562 U.S. at 105. As the state court noted, an acquittal of Aggravated Stalking in Case No. 2014-CF-17 would not have prevented the VOP court from finding Reilly guilty of violating his probation, because the State's burden of proof on a VOP is lower and the State still had sufficient evidence to meet its lesser burden. *See*

*Knight v. State*, 187 So. 3d 307, 309 (Fla. 5th DCA 2016) (the standard for proving a violation of probation is the preponderance-of-the-evidence standard); *Morris v. State*, 727 So. 2d 975, 977 (Fla. 5th DCA 1999) (an acquittal in a criminal case does not preclude a judge from determining a violation of parole or probation has occurred); *see also Newmones v. Sec'y, Fla. Dep't of Corr.*, 546 F. App'x 812, 816 (11th Cir. 2013) (the sufficiency-of-the-evidence standard applicable to probation revocation proceedings is the "totally-devoid of evidence" standard applied in *Douglas v. Buder*, 412 U.S. 430 (1973)).

Reilly also has not shown that there was a reasonable probability the State's evidence against him would have been different had he elected to have the VOP charge heard separately. Reilly makes a vague, unsupported assertion that "much of the evidence [in Case No. 2014-CF-17] was unsubstantiated hearsay," but he goes no further than this conclusory argument. Reilly identifies no evidence that would have been excluded from the VOP hearing, nor does he suggest that *all* of the evidence would have been excluded.

In Florida, "hearsay evidence is admissible in a probation revocation hearing to prove a violation of probation." *Russell v. State*, 982

So. 2d 642, 646 (Fla. 2008); *see also Silimon v. Sec'y, Fla. Dep't of Corr.*, 554 F. App'x 838, 841 (11th Cir. 2014) (citing *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Furthermore, the State had more than just hearsay. The victim herself (J.D.) testified that Reilly continued to stalk her and contact her. *See* Doc. 49-17.

For all of the reasons discussed above, the state court's rejection of Reilly's ineffective-assistance claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts. Reilly is not entitled to habeas relief on Ground Two.

## IV.  A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100, 115 (2017). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation, the relevant party shall file such an objection with the District Court.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.      The petition for writ of habeas corpus, Doc. 1, challenging the 2009 judgment of conviction and the 2015 revocation of probation in *State of Florida v. Sean P. Reilly*, Leon County Circuit Court Case No. 2008-CF-4221, be **DENIED**.

2.      The District Court **DENY** a certificate of appealability.

3.      The clerk of court close this case file.

At Panama City, Florida, this <u>18th</u> day of July, 2024.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

### <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**